IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

CENTER FOR A SUSTAINABLE COAST )
and SAVANNAH RIVERKEEPER, )
)
Plaintiffs, )
)
v. ) CASE NO. CV413-119
)
U.S. ARMY CORPS OF ENGINEERS; )
LT. GENERAL THOMAS P. BOSTICK, )
U.S. Army Corps of Engineers; )
COLONEL THOMAS J. TICKNER, U.S. )
Army Corps of Engineers, )
Savannah Division; )
)
Defendants. )
)

## ORDER

Before the Court are the parties' Motions for Summary Judgment. (Doc. 23; Doc. 26.) For the following reasons, Plaintiff's Motion for Summary Judgment (Doc. 23) is **DENIED** and Defendant's Motion for Summary Judgment (Doc. 26) is **GRANTED**. The Clerk of Court is **DIRECTED** to close this case.

### BACKGROUND

This case centers on a 2012 decision by Defendant Army Corps of Engineers[1] to reissue Programmatic General Permit 0083 ("PGP0083"), which covers construction of single-family docks in Georgia's coastal counties. (Doc. 23 at 1.)

---

[1] Because all of Plaintiff's claims are applicable to all Defendants, the Court will refer to them collectively as simply "Defendant."

Specifically, Plaintiffs object to Defendant's inclusion of a provision that allows an individual to exceed the permit's maximum dock area and length by up to 25% when constructing the dock with grated decking materials designed to allow more sunlight to pass though compared to traditional wood-plank decking. (Id. at 1-2.) According to the complaint, Defendant's decision violated the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706, Rivers and Harbors Appropriation Act of 1899 ("RHA"), 33 U.S.C. § 403, and National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370f.

PGP0083, which was first issued in 1996, is a regional permit encompassing Georgia's coastal counties.[2] (Doc. 21 at 9-10.) While Defendant formulates the requirements and parameters of the permit, the Georgia Department of Natural Resources, Coastal Resources Division ("CRD") is responsible for administering the permitting program. (Id. at 10.) After 1996, PGP0083 was reissued in 2001, 2007, and 2012 based on revisions and clarifications requested by CRD. (Id. at 11.) According to Defendant, the requested revisions were designed to streamline the permitting

---

[2] The facts material to this case are contained in the administrative record (Doc. 21) and are not in dispute.

process by matching PGP0083's parameters to those contained in CRD's permitting program.[3]

The 2007 version of PGP0083 included a maximum dock area of 3,000 square feet, with no limit on length, and a 50% credit for using grated decking materials. (Id. at 11.) Therefore, the 2007 permit allowed an individual using grated decking to construct a dock with a maximum area of 4,500 square feet. The 2012 permit retained the 3,000 square-foot limit, but also restricted the length of the walkway to 1,000 feet. (Id.) In addition, the credit for using grated decking was reduced to 25%, allowing a dock with a maximum length of 1,250 feet and maximum area of 3,750 square feet. (Id.) According to Defendant, CRD requested the reduction after determining that the 50% credit for using grated decking was inaccurately inflated. (Id. at 18.)

Unhappy with the credit for grated decking, Plaintiffs filed suit in this Court challenging Defendant's decision to reissue PGP0083 with the 25% credit. (Doc. 1.) In their complaint, Plaintiff argues that Defendant violated the RHA and APA by failing to both "adequately consider the shading impact that docks have on the marsh vegetation and the

---

[3] Construction of a new dock requires a permit from both Defendant and the CRD.

public interest" (id. ¶ 40) and "reasonable alternatives to the PGP's size exception" (id. ¶ 44). In addition, Plaintiffs contend that Defendant violated NEPA and the APA by failing "to take a hard look at the shading impact of grated docks." (Id. ¶ 47.) Finally, Plaintiffs reason that Defendant violated the APA by including the 25% credit in the face of opposition from environmental advocacy groups and scientific data contradicting the effectiveness of grated decking. (Id. ¶ 49.)

In their Motion for Summary Judgment, Plaintiffs argue that Defendant's decision is arbitrary and capricious because it relied on a 2012 study by Dr. Clark Alexander ("Alexander Study") that directly contradicts Defendant's reasoning behind the 25% credit. (Doc. 23 at 11-17.) In addition, Plaintiffs contend that the inclusion of the arbitrary 25% credit violates the RHA and the NEPA. (Id. at 17-20.) In its Motion for Summary Judgment,[4] Defendant maintains that its decision to reissue PGP0083 with the CRD's requested modifications is consistent with both the RHA and NEPA because Defendant reasonably concluded that the overall area of marsh impacted by dock shading was miniscule compared to the total area of marsh in the

---

[4] Included in Defendant's Motion for Summary Judgment is its response to Plaintiffs' motion.

4

counties subject to the permit. (Doc. 26 at 9-19.) Defendant reasons that it adequately addressed the Alexander Study and public comments, ultimately deciding that issuing the permit with a 25% credit was in the public interest. (Id.)

**ANALYSIS**

I. <u>STANDARD OF REVIEW</u>

Summary judgment is granted when the movant shows that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P 56(a). The evidence is to be viewed in the light most favorable to the non-moving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986). When reviewing an agency determination under the APA, the Court looks only to those facts contained in the administrative record. <u>Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'g</u>, 87 F.3d 1242, 1246 (11th Cir. 1996) (<u>citing</u> <u>Camp v. Pitts</u>, 411 U.S. 138, 142 (1973)).

However, the APA requires the Court to afford the agency decision great deference when determining whether a party is entitled to summary judgment. <u>Id.</u> As a result,

5

district courts may only "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. Under this deferential "arbitrary and capricious" standard, the Court " 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' " Marsh v. Or. Natural Res. Council, 490 U.S. 360, 378 (1989) (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)). The standard is exceedingly narrow and prohibits the Court from substituting its judgment for that of the agency. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). However, the agency is required to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.' " Id. (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)). Nevertheless, "[i]f an agency considers the proper factors and makes a factual determination on whether the environmental impacts

6

are significant or not, that decision implicates substantial agency expertise and is entitled to deference." Marsh, 490 U.S. at 376.

II. RIVERS AND HARBORS ACT

The RHA requires individuals to obtain a permit from the Army Corps of Engineers ("Army Corps") for any structure in or affecting navigable waters. 33 C.F.R. § 322.3. While there are several methods for obtaining a permit, the Army Corps is authorized to issue permits "on a nationwide or regional basis for a category or categories of activities." Id. This type of permit is permissible where "the general permit would result in avoiding unnecessary duplication of the regulatory control exercised by another Federal, state, or local agency provided it has been determined that the environmental consequences of the action are individually and cumulatively minimal." Id. § 322.2(f). The Army Corps decision to issue a general permit must be based "on an evaluation of the probable impacts, including cumulative impacts, of the proposed activity and its intended use on the public interest." Id. § 320.4

III. NATIONAL ENVIRONMENTAL POLICY ACT

NEPA imposes two separate requirements on government agencies. Balt. Gas & Elec. Co. v. Natural Res. Def. Council, 462 U.S. 87, 97 (1983). First, the agency is required to " 'consider every significant aspect of the environmental impact of a proposed action.' " Id. (quoting Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519, 553 (1978)). Second, the agency must notify the public of the potential environmental impacts presented by its proposed action and explain how its decision-making addressed those impacts. Id. NEPA does not place any actual limits on agency decision-making, but only establishes procedures that the agency must follow. Sierra Club v. Van Antwerp, 526 F.3d 1353, 1360-61 (11th Cir. 2008).

Compliance with NEPA requires the agency to first determine whether the proposed action qualifies as a major federal action with significant effect. Sierra Club v. U.S. Army Corps of Eng's, 295 F.3d 1209, 1214-15 (11th Cir. 2002). Generally, the agency is required to prepare an environmental assessment a part of ascertaining whether it is engaging in a major federal action. Hill v. Boy, 144 F.3d 1446, 1450 (11th Cir. 1998). Based on the environmental assessment, the agency may reach one of two

conclusions: a finding that the proposed project will have a significant effect on the environment, or a finding of no significant impact. Sierra Club, 295 F.3d at 1215.

IV. PROGRAMMATIC GENERAL PERMIT 0083

The crux of Plaintiffs' argument concerning PGP0083 is that Defendant's decision to include the 25% credit for using alternate decking materials is contrary to the conclusions contained in the Alexander Study. Plaintiffs contend that Defendant's inclusion of that credit violates the APA because it is arbitrary and capricious. (Doc. 23 at 11-17.) In addition, Plaintiffs maintain that Defendant violated the RHA because the inclusion of the 25% credit renders Defendant's public interest determination arbitrary and capricious. (Id. at 17-18.) Finally, Plaintiff contends that Defendant violated NEPA because Defendant failed to take a hard look at the permit's environmental impacts. (Id. at 18-19.) In this respect, Plaintiff reasons that Defendant misused the data from the Alexander Study and failed to offer a cogent explanation for the 25% credit despite the study's contrary conclusion. (Id. at 19.) The Court, however, finds Plaintiffs' arguments to be without merit.

The problem with Plaintiffs' argument is that their interpretation of Defendant's decision finds little support

in the administrative record. What is clear is that the 25% credit was first requested by the CRD to "match its permitting program." (Doc. 21 at 10.) This, of course, is unsurprising because the purpose of a Programmatic General Permit is to "avoid[] unnecessary duplication of the regulatory control exercised by another Federal, state, or local agency provided it has been determined that the environmental consequences of the action are individually and cumulatively minimal." 33 C.F.R. § 322.2(f). The purpose of Defendant's analysis under the RHA and NEPA was to determine whether the individual and cumulative environmental impacts of the proposed permit would be minimal, id., and whether issuing the permit would have a significant impact on the environment, Sierra Club, 295 F.3d at 1215.

In this regard, Defendant commissioned the National Oceanic and Atmospheric Administration ("NOAA") to perform a comprehensive study of total marsh acreage subject to PGP0083 and the percentage shaded by dock structures. (Doc. 21 at 64-106.) The results of this study indicated that in 2010 the maximum shade coverage caused by docks for any of Georgia's coastal counties was 0.04%. Even accounting for future dock construction, the study conservatively determined that the maximum shade coverage by 2030 would

only be 0.09% in any county. Based on these findings, Defendant concluded that shade from docks constructed under PGP0083, even with the 25% credit, would have a minimal effect on the marsh because of the small percentage of marsh actually affected. (Id. at 28.)

Plaintiffs challenge neither the accuracy of the NOAA study nor Defendant's use of that information. Furthermore, this Court's review has failed to identify any concerns with Defendant's use of the NOAA study. Given the negligible impact of dock shading for the Georgia counties covered under PGP0083, the Court is unable to determine that Defendant's decision to issue the permit is either arbitrary and capricious, or in violation of the RHA and NEPA.

Plaintiffs, however, contend that Defendant's decision to blindly accept the CRD's request for the 25% credit is arbitrary and capricious because Defendant had an obligation to verify the accuracy of the CRD's request and the contrary conclusion contained in the Alexander Study. (Doc. 32 at 3.) Again, the problem with Plaintiffs' argument is that the administrative record does not support their interpretation of Defendant's decision-making.

Despite Plaintiffs' narrative to the contrary, the administrative record indicates that both the CRD and

Defendant used the Alexander Study as a refutation of the 50% credit contained in the 2007 version of PGP0083, not necessarily in support of the 25% credit. In addressing the change from the 2007 permit, Defendant stated that "Dr. Alexander's study results indicate that the 50% light penetration 'credit' granted by the [2007] PGP0083 for the use of alternative decking material is inaccurately inflated." (Doc. 21 at 18.) To be fair, Defendant does go on to note that certain data from the Alexander Study, when averaged, suggests that grated decking provides, on average, 20% more light penetration during spring and summer months. (Id.) Without specific reference to the Alexander Study or its conclusions, Defendant notes that a "25% light penetration 'credit' is being proposed as a modification to the [2007] PGP0083." (Id.)

Given the deference applicable to agency decisions, the Court is unable to conclude that Defendant specifically relied on the Alexander Study when deciding to include the 25% credit in PGP0083. It is equally plausible that Defendant assessed the CRD's request in terms of the individual and cumulative impacts posed by issuing PGP0083 with a 25% credit, finding the effects of its inclusion de minimus in light of the exceptionally small percentage of marsh subject to shade from dock structures both at that

12

time and in the future. As noted above, this assessment would serve to satisfy Defendant's obligations under both the RHA and NEPA. Giving Defendant the deference to which it is entitled, its decision to include the credit is not arbitrary and capricious because a reasonable reading of the administrative record indicates that Defendant determined the appropriateness of the 25% credit based on its potential environmental impact rather than the Alexander Study's conclusions.

Even assuming Defendant relied on the Alexander Study, however, Plaintiffs' argument still fails because the study lends support to Defendant's conclusion. The Alexander Study calculated the percentage of photosynthetically active radiation ("PAR") received by the marsh from both indirect and direct light during times of shade. (Doc. 21 at 475.) During the spring and summer months, when marsh grass is most active, docks constructed of grated decking resulted in 12% to 41% of total PAR compared to only 7% to 19% for traditional wood-plank decking. (Id. at 474-476.) The variations are the result of season, dock orientation, and dock height. (Id.) Based on the data, Defendant concluded that grated decking results in the marsh receiving an average of 20.75% PAR during spring and summer. Moreover, Defendant recognized that the Alexander

13

Study concluded that "none of the materials effectively changed the negative impact of shading," but noted that the study was conducted mostly on docks north of the permit area. (Id. at 37.) Defendant reasoned that the higher elevation of the sun in southern latitudes would result in greater reduction of shading impacts. (Id.)

Given Defendant's calculations, the Court is unable to conclude that reliance on the Alexander Study to support a 25% credit would be arbitrary and capricious. The Court must afford Defendant great deference when reviewing its assessment of the data and ultimate conclusion. Viewed in this light, Defendant's decision to issue PGP0083 with the 25% credit did not violate the APA, RHA, or NEPA. Plaintiffs' arguments to the contrary are based more in their disagreement with Defendant's ultimate decision regarding the 25% credit. However, neither Plaintiffs nor this Court is permitted to substitute its decision for that of Defendant. Accordingly, Plaintiffs' request for summary judgment must be denied. For the same reasons, Defendant is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. 23) is **DENIED** and Defendant's Motion

for Summary Judgment (Doc. 26) is **GRANTED**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this 31st day of March 2015.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA